**CONTROL DATA CORPORATION,**
Plaintiff,

v.

**INTERNATIONAL BUSINESS MACHINES CORPORATION,**
Defendant.

**DATA PROCESSING FINANCIAL & GENERAL CORPORATION,**
Plaintiff,

v.

**INTERNATIONAL BUSINESS MACHINES CORPORATION,**
Defendant.

**APPLIED DATA RESEARCH, INC.,**
Plaintiff,

v.

**INTERNATIONAL BUSINESS MACHINES CORPORATION,**
Defendant.

**PROGRAMMATICS INCORPORATED,**
Plaintiff,

v.

**INTERNATIONAL BUSINESS MACHINES CORPORATION,**
Defendant.

Nos. 3–68 Civ. 312, 3–69 Civ. 157, 3–69 Civ. 158, 3–69 Civ. 159.

United States District Court,
D. Minnesota,
Third Division.

June 30, 1970.

See also 8 Cir., 430 F.2d 1277.

Cravath, Swaine & Moore, by Thomas D. Barr, New York City, for IBM.

The Malcolm A. Hoffman Law Firm, New York City, by Malcolm A. Hoffman and Robert W. Biggar, Jr., New York City, for ADR.

## ORDER DENYING DISQUALIFICATION OF ATTORNEY

NEVILLE, District Judge.

At a pretrial conference held before the court on June 11, 1970 at St. Paul, Minnesota, one of the matters for consideration was defendant's motion seeking to disqualify Malcolm A. Hoffman and Robert W. Biggar, Jr. from acting as counsel for plaintiffs Applied Data Research, Inc. and Programmatics Incorporated. Affidavits and briefs were submitted and arguments presented by Cravath, Swaine & Moore by Thomas D. Barr for the defendant in support of the motion and by Malcolm A. Hoffman and Robert W. Biggar, Jr. in opposition thereto. The court heard the arguments of counsel and has reviewed the affidavits and the brief submitted by counsel and based thereon and on all the files, records and proceedings herein,

It is ordered That the motion of International Business Machines Corporation to disqualify Malcolm A. Hoffman and Robert W. Biggar, Jr. of the law firm of Malcolm A. Hoffman as counsel for plaintiffs Applied Data Research, Inc. and Programmatics Incorporated be and the same hereby is denied.

## MEMORANDUM

The effort to disqualify Malcolm A. Hoffman is bottomed on the fact that from the year 1944 until July 1, 1955 Malcolm A. Hoffman was an employee of the Department of Justice in Washington, D. C., serving in the Antitrust Division; that during approximately the last six months of such service he handled for the Department of Justice the civil antitrust case then pending and brought by the United States of America against International Business Machines Corporation in the Southern District of New York and which culminated in a consent decree dated January 25, 1956. He is therefore said to be in violation of Canon 36 of the American Bar Association's Canons of Ethics. There is no question but that Mr. Hoffman was active in and had charge of negotiations in the case for a period of some six months, although he was not with the Department of Justice at the time some seven months later when the decree actually was entered. The record shows that he had numerous or at least a number of

conferences with IBM counsel and the Court concerning the prospective settlement of the case. Also it appears that when the case was commenced in 1952 its principal thrust was in relation to tabulating equipment. Electronic data processing machines were not introduced into the case until nearly its end. As of June 20, 1955 no agreement had been reached thereon.

 This court is very sensitive to the Canons of Ethics, Exchange National Bank v. Abramson, 278 F.Supp. 849 (D.Minn.); Allied Realty of St. Paul, Inc. v. Exchange National Bank of Chicago, 283 F.Supp. 464 (D.Minn.1968), and is wont to disqualify any counsel where he is using or may appear to be able to use information obtained while an employee of the government later in his private practice of law. The appearance of evil is to be avoided. See discussion of Canon 36 set out by Judge Kaufman in The Former Government Attorney and the Canons of Professional Ethics, 70 Harv.L.Rev. 657 (1957). For a number of reasons, however, the court does not believe that Malcolm A. Hoffman should be disqualified:

1. His service with the Department of Justice terminated 15 years ago;

2. At the time of the institution of the government suit in 1952 the subject matter involved was tabulating machines and equipment as distinguished from electronic computers and data processing machines and it was not until the very end of the period of Mr. Hoffman's service with the Department of Justice and when the consent decree was about to be entered that any inclusion was made of the latter.

3. The entire business of the computer industry has so completely changed and has developed so extensively since 1955 that the court cannot believe any information obtained by Mr. Hoffman, if the same is still in his memory, which he denies generally, can possibly be of any value or use in connection with this case.

4. This court in its order dated November 12, 1969 ruled that there can be no showing at the trial nor references to the 1956 consent decree. Thereafter this order was certified to the Court of Appeals under 28 U.S.C. § 1292(b), but that court refused to hear this interlocutory matter at this time. That order thus stands as of now and therefore any knowledge that Mr. Hoffman may have concerning IBM that he acquired 15 years ago is, it seems to the court, largely if not completely irrelevant and immaterial. IBM counsel asserts that events from 1952 on may be important and admissible in evidence, and further that plaintiffs have sought discovery that far back. The court cannot at least at this stage attach that much importance to matters so far preceding the applicable statute of limitations.

5. Certainly the claimed illegal acts of which IBM is now accused are nothing which Mr. Hoffman "investigated or passed upon" in 1955, within the meaning of Canon 36.

 As to Robert W. Biggar, Jr., apparently he was employed during June, July and August 1956 by a law firm, Olwine, Connelly, Chase, O'Donnell & Weyher, which represented and did some legal work for IBM in connection with a civil suit which was then pending against it and brought by Sperry Rand and Co. He is charged with a violation of Canons 6 and 37. Mr. Biggar was then 30 years of age; he was given the task of examining some of the files of Mr. Watson the then President and now Chairman of the Board of IBM and expended some 300 hours in so doing. He states in his affidavit he has no recollection as to what he examined except as to Mr. Watson's boy scout activities and other matters which had and have nothing to do with the issues of this case. Again the development of computers has so completely progressed and changed since 1955 and 1956 that it is difficult for the court to believe any information gleaned by Mr. Biggar that far back, if he remembers it at all, working in a rather

148

ministerial capacity should militate now to bar him some 14 years later from participating for a plaintiff in this litigation. His participation does not create to this court the appearance of evil.

Both Mr. Hoffman and Mr. Biggar have assured this court that any prior activity cannot and will not affect this case nor give them any advantage over any other counsel whom plaintiffs might employ and the court takes them at their word, there being no real showing to the contrary.

The well reasoned case of Hilo Metals Co. v. Learner Co., 258 F.Supp. 23 (D. Hawaii 1966), is clearly inapposite to the situation in the case at bar, for there the former government attorney almost immediately on ceasing government employment became retained in a matter as a private lawyer where he had previous "direct participation * * * in the investigation of alleged violations of the anti trust laws."